# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.    CASE NO: 3:08-cr-195-HLA-PDB-2

JABARI HIRD    ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)

## **O R D E R**

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED

Defendant Jabari Hird is a 41-year-old inmate incarcerated at Lewisburg USP, serving a 324-month term of imprisonment for conspiracy to commit Hobbs Act robbery, armed bank robbery, and brandishing a firearm during and in relation to a crime of violence. (Doc. 143, Amended Judgment).[1]

---

[1] The Court originally sentenced Defendant in 2009 to a term of 410 months in prison. (Doc. 109, Judgment). In 2010, the Eleventh Circuit Court of Appeals vacated his sentence because of a guidelines miscalculation and remanded for resentencing. United States v. Hird, 398 F. App'x 584 (11th Cir. 2010). The Court resentenced Defendant to a term of 324 months

According to the Bureau of Prisons (BOP), he is scheduled to be released from prison on January 14, 2032. Defendant seeks compassionate release because of the Covid-19 pandemic and the conditions at Ray Brook FCI, family circumstances, and the alleged unfairness of his sentence. (Doc. 171, Motion for Compassionate Release). The United States filed a response in opposition. (Doc. 174, Response). Although he was not granted leave to do so, Defendant filed a reply brief. (Doc. 178, Reply).

A movant under § 3582(c)(1)(A) bears the burden of proving that a sentence reduction is warranted. United States v. Heromin, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. Jun. 7, 2019); cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (a movant under § 3582(c)(2) bears the burden of proving that a sentence reduction is appropriate). The statute provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). "Because the statute speaks permissively and says

---

in prison in 2011, which the Eleventh Circuit affirmed. United States v. Hird, 451 F. App'x 830 (11th Cir. 2011).

that the district court 'may' reduce a defendant's sentence after certain findings and considerations, the court's decision is a discretionary one." United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021). As the Third Circuit Court of Appeals has observed, the mere existence of Covid-19 cannot independently justify compassionate release, "especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant has not demonstrated extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A). See also U.S.S.G. § 1B1.13 & cmt. 1. First, Defendant seeks compassionate release because of the Covid-19 pandemic, the conditions at his prison, and because he is overweight. At the time he filed the Motion for Compassionate Release, Defendant was housed at Ray Brook FCI. (See Doc. 171 at 3). He asserts that Ray Brook FCI failed to provide such things as adequate hygiene, adequate ventilation, or adequate social distancing, making the environment conducive to the spread of coronavirus. However, he is now housed at Lewisburg USP. Thus, to the extent Defendant seeks a reduction in sentence based on the conditions at Ray Brook FCI, that argument is now moot.

Moreover, the Covid-related conditions at Defendant's current facility, Lewisburg USP, do not rise to the level of extraordinary and compelling circumstances. All prisons are inherently difficult environments in which to

3

control the spread of infectious diseases. As such, most BOP facilities have experienced an outbreak of Covid-19 to some extent. The state of affairs at Lewisburg USP is not exceptional compared to other prisons. According to the BOP's latest data, zero inmates and only one staff member are currently positive for coronavirus; 243 inmates and 80 staff members have recovered; and not one inmate or staff member has died of coronavirus.[2] Moreover, 207 staff members and 385 inmates at Lewisburg USP have been fully vaccinated against Covid-19, representing about 51% of the facility's 762 inmates. That Lewisburg USP has seen inmates and staff infected with Covid-19 is not an "extraordinary and compelling" reason for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A).[3]

As for Defendant's weight, the Centers for Disease Control (CDC) report that being overweight (i.e., having a body mass index [BMI] of at least 25 but less than 30) can increase the risk of severe illness from Covid-19.[4] However, the evidence of an association between developing severe Covid-19 and being overweight is not as strong as the evidence linking severe Covid-19 with

---

[2] https://www.bop.gov/coronavirus/. Last accessed May 5, 2021.

[3] The Court recognizes that there is a split of authority over whether district courts are bound by the list of extraordinary and compelling reasons contained in U.S.S.G. § 1B1.13, cmt. 1(A)-(D). See, e.g., United States v. Ruffin, 978 F.3d 1000, 1006–08 (6th Cir. 2020). The Court's decision does not depend on the resolution of that issue because it would reach the same conclusion if it had discretion to identify extraordinary and compelling reasons.

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

4

obesity (defined has having a BMI of 30 or greater).[5] Moreover, there is nothing extraordinary about being overweight. According to the CDC, as of 2017-2018, 73.6% of all Americans over the age of 20 were either overweight or obese.[6] Assuming federal prisoners experience these conditions at the same rate as the general population, nearly three quarters of the federal prison population would be eligible for compassionate release if being overweight qualified as an "extraordinary and compelling" circumstance. Defendant does not submit evidence of any other underlying health conditions in his Motion. Given that he is only 41 years old, neither Defendant's weight nor the Covid-19 pandemic, alone or in combination, qualifies as an extraordinary and compelling circumstance.

Second, Defendant seeks compassionate release based on family circumstances. He contends that his elderly mother and father are in failing health and that they are increasingly unable to care for themselves. (Doc. 171 at 6–7). Defendant also claims he is the only person available to care for his parents. Defendant attaches two letters from his father and alleged mother, which the Court has considered. (Doc. 171-1 at ECF pp. 6–7, Def. Ex. E; Doc. 171-1 at ECF pp. 8–9, Def. Ex. F). According to Defendant's father, James Hird,

---

[5] https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

[6] https://www.cdc.gov/nchs/fastats/obesity-overweight.htm.

Defendant is the only person who can properly care for him and his wife because Mr. Hird's oldest son is in jail and because "[t]he rest of [his] children are not really around." (Doc. 171-1 at ECF p. 8).

Preliminarily, there is a discrepancy between the letters attached to the Motion and the family information contained in Defendant's PSR. In one of the letters, a woman named Laura Damoto claims to be Defendant's mother. (Id. at ECF pp. 6–7). But according to the 2009 PSR, Defendant's mother is Annie Pender of Orlando, Florida, then aged 49. (PSR at ¶ 80). While Mr. Hird indeed appears to be Defendant's father (see id.), Ms. Damoto does not appear to be Defendant's mother. Liberally construing her letter and Defendant's Motion, the Court assumes that what she and Defendant intended to say is that Ms. Damoto is Defendant's step-mother.

That said, Defendant's family circumstances do not rise to the level of "extraordinary and compelling." The relevant policy statement, U.S.S.G. § 1B1.13, does not contemplate the incapacitation of a parent or a parent's caregiver as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13, cmt. 1(C). Rather, the "family circumstances" provision of the policy statement encompasses only (i) the death or incapacitation of a minor child's caregiver or (ii) the incapacitation of the defendant's spouse, where the defendant is the only available caregiver. Id. The Court recognizes that several circuit courts have held that § 1B1.13 is not an applicable policy

statement for defendant-initiated motions under 18 U.S.C. § 3582(c)(1)(A), and therefore it does not bind district courts. See, e.g., United States v. Aruda, 993 F.3d 797, 801 (9th Cir. 2021) (collecting cases). However, even if the policy statement is not binding, the United States points out that there is a "seemingly obvious reason" why having aging parents is not an extraordinary and compelling circumstance: "Nearly everyone (at one point or another) has elderly, sick, and/or infirm parents. If caring for elderly parents was included in USSG § 1B1.13, a significant majority of federal inmates would be eligible for release." (Doc. 174 at 8).

Moreover, the evidence is insufficient to show that Defendant is the only person who could care for his parents. According to the PSR, Defendant has four siblings, two of whom live in the same city as his parents. (PSR at ¶ 81). Mr. Hird states that his other children "are not really around" (Doc. 171-1 at ECF p. 8), but that is not enough to show that one or more of Defendant's siblings could not act as a caregiver. Mr. Hird also states that his oldest son (James Hird, Jr.) is not available because he is in jail. (See id.); (see also PSR at ¶ 81). But there is an obvious incongruity in arguing that because one sibling's incarceration makes him unavailable to act as a caregiver, the Court should release another incarcerated sibling. Defendant's alleged family circumstances do not justify releasing a lawfully convicted violent felon more than a decade early from his sentence.

7

Third, Defendant argues that the alleged "unfairness" of his sentence is an extraordinary and compelling reason under § 3582(c)(1)(A). He argues that his sentence is excessive because nobody was harmed or killed in the course of his offenses, because there is a disparity between his sentence and that of his codefendant, Rasheed Silvera (who was sentenced to 92 months in prison), and because he was sentenced as a guidelines career offender based on what Defendant describes as two petty drug offenses.

The Court rejects this argument because there is nothing unfair about Defendant's 324-month prison sentence. Defendant's sentence is well under the applicable statutory maximum sentence of life in prison, and in the middle of his 294-to-346-month guidelines range. (See PSR at ¶ 96; Doc. 147, Resentencing Transcript at 3). As detailed in the PSR and the factual basis of Defendant's guilty plea, he planned and executed a violent armed bank robbery with his codefendant. (Doc. 125, Plea Transcript at 31–34; PSR at ¶¶ 6–10).[7] On April 12, 2005, Defendant and Silvera stormed the Country Federal Credit Union in Glen St. Mary, Florida, and ordered three women who were working as tellers that day to get on the ground. Defendant entered the bank first, brandishing a firearm. One of the tellers ran toward the back door, but

---

[7]   Defendant and Silvera originally scoped out and planned to rob the Mercantile Bank in Glen St. Mary, but on the day of the planned robbery, they decided to rob another bank because a person saw and engaged them in conversation outside the Mercantile Bank.

Defendant jumped a barrier, grabbed the teller, and dragged her back by her hair. Defendant ordered the teller to open the bank vault but she told Defendant she did not know how to. Defendant and Silvera told the women to cooperate if they wanted to see their children again. Silvera approached a different teller, demanded that she open the vault, and she did so. While Defendant took money from the teller drawers, Silvera stuffed money from the vault into a pillow case. They ordered the women to stay on the floor and count to 200 while they escaped. Altogether, Defendant and Silvera stole $147,411.11 from the bank. At the original sentencing hearing, the prosecutor read aloud a victim impact statement from one of the tellers, in which she described the trauma she suffered. (Doc. 127, Sentencing Transcript at 41–43). The woman recalled how she had loved her job but had to resign because she could not return to work after the robbery. She was diagnosed with post-traumatic stress disorder, went to a therapist, and was prescribed medication, but nothing worked. At the conclusion of the first sentencing hearing, the Court remarked:

> The offense in this case is one of the most violent and dangerous offenses that I've seen since I've been on this [bench] other than an actual killing of another human being[,] which leaves this Court to conclude that the defendant is a very dangerous individual who should be housed for a very long time.

(Id. at 56).

Defendant complains about the disparity between his sentence and that of his codefendant, but this complaint fails to appreciate several differences

between Defendant and Silvera. Defendant brandished a firearm, Silvera did not; Defendant seized one of the victims as she tried to escape and dragged her back, Silvera did not; Defendant was a guidelines career offender, Silvera was not; and Silvera cooperated with the government, Defendant did not. (See Doc. 127 at 39–40). And while Defendant complains about being sentenced as a guidelines career offender based on what Defendant considers to be two petty drug offenses, his case is no different from countless other defendants who are sentenced as career offenders based on prior convictions for the sale or delivery of cocaine. (See PSR at ¶¶ 29, 63, 69). To reiterate, Defendant's sentence is far from unfair.[8]

Finally, even if Defendant had demonstrated extraordinary and compelling circumstances, the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence for the reasons described above. The Court recognizes and commends Defendant for trying to develop a positive attitude and positive ways of thinking. However, his unfounded complaints about the unfairness of his sentence cause the Court to question whether he grasps the severity of the offenses of conviction. In view of all the § 3553(a) factors,

---

[8] As noted earlier, the Court recognizes that several circuit courts have concluded that U.S.S.G. § 1B1.13 is not an applicable policy statement for defendant-initiated motions for compassionate release, and therefore does not bind district courts. See, e.g., Aruda, 993 F.3d at 801 (collecting cases). The Eleventh Circuit Court of Appeals has not yet ruled on this issue, though the matter is pending in several cases. The Court's decision does not depend on the resolution of this issue because it would reach the same conclusion even if it has discretion not to follow § 1B1.13 and its commentary.

reducing Defendant's sentence would fail to accomplish the statutory purposes of sentencing, including the need to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and to protect the public.

Accordingly, Defendant's Motion for Compassionate Release (Doc. 171) is **DENIED**.[9]

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of May, 2021.

BRIAN J. DAVIS
United States District Judge

lc 19

Copies:
Counsel of record
Defendant

---

[9] To the extent Defendant requests that the Court order a direct transfer to home confinement, the Court cannot grant that request because the Attorney General has exclusive jurisdiction to decide which prisoners to place in the home confinement program. See United States v. Alvarez, No. 19-cr-20343-BLOOM, 2020 WL 2572519, at *2 (S.D. Fla. May 21, 2020); United States v. Calderon, 801 F. App'x 730, 731-32 (11th Cir. 2020) (a district court lacks jurisdiction to grant a request for home confinement under the Second Chance Act).